Filed 4/26/16  William Jefferson & Co. v. County of Orange CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILLIAM JEFFERSON & CO., INC., | |
| Plaintiff and Appellant, | G051979 |
| v. | (Super. Ct. No. 30-2014-00753755) |
| COUNTY OF ORANGE, et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, John C. Gastelum, Judge.  Affirmed.

Law Office of William A. Kent and William A. Kent for Plaintiff and Appellant.

Leon J. Page, County Counsel, and Adam C. Clanton, Deputy County Counsel, for Defendant and Respondent County of Orange.

Leon J. Page, County Counsel, and Ronald T. Magsaysay, Deputy County Counsel, for Defendant and Respondent Orange County Assessment Appeals Board No. 2.

\*          \*          \*

Plaintiff William Jefferson & Co., Inc. (Jefferson) appeals from the judgment dismissing its lawsuit against defendants County of Orange (County) and Orange County Assessment Appeals Board No. 2 (Appeals Board). This action is Jefferson's third lawsuit challenging the Appeals Board's decision denying Jefferson's application to reduce the base year value the Orange County Assessor (Assessor) established for Jefferson's property in 1993.

Jefferson filed its first lawsuit in federal court, alleging the Appeals Board denied Jefferson a fair hearing and violated its due process rights. Following a bench trial, the federal district court entered judgment against Jefferson and the Ninth Circuit Court of Appeals affirmed that judgment. (*William Jefferson & Co., Inc. v. Bd. of Assessment* (9th Cir. 2012) 695 F.3d 960, 961 (*Jefferson & Co.*).) Shortly after filing its federal court lawsuit, Jefferson filed a state court lawsuit seeking an order compelling the Appeals Board to reduce the base year value for Jefferson's property and to refund the excess taxes Jefferson paid to satisfy the assessment. The trial court granted the Appeals Board summary judgment because a tax refund action must be brought against the city or county that collected the taxes, not the local appeals board that heard the administrative challenge to the tax. We affirmed the trial court judgment in an earlier opinion. (*William Jefferson & Co., Inc. v. Orange County Assessment Appeals Bd. No. 2* (2014) 228 Cal.App.4th 1, 5-6 (*William Jefferson I*).)

In this action, Jefferson again sought to compel the Appeals Board and the County to reduce the base year value for Jefferson's property and to refund the excess taxes Jefferson paid. Jefferson alleged the Appeals Board improperly denied Jefferson's application because (1) no evidence supported the base year value the Assessor

2

established in 1993; (2) only one member of the three-member Appeals Board signed the decision; and (3) the Appeals Board denied Jefferson a fair hearing and violated its due process rights. The trial court sustained the Appeals Board's and the County's demurrers without leave to amend because a tax refund action may not be maintained against the Appeals Board, Revenue and Taxation Code section 5141, subdivision (a)'s six-month limitations period barred Jefferson's claim against the County, and the judgment in the earlier federal court lawsuit barred Jefferson from relitigating its fair hearing and due process claim.[1]

We affirm. As explained in *William Jefferson I*, a tax refund action is the only way to challenge a local property tax assessment, and must be brought against the city or county that collected the tax, not the local appeals board. (*William Jefferson I*, *supra*, 228 Cal.App.4th at pp. 11-12.) Moreover, a tax refund action must be brought within six months of the local appeals board's decision, and an action mistakenly brought against the local appeals board does not toll the statute of limitations because the law establishes the city or county as the only proper defendant. (§ 5141, subd. (a); *Schoenberg v. County of Los Angeles Assessment Appeals Bd.* (2009) 179 Cal.App.4th 1347, 1355-1356 (*Schoenberg*).) Finally, Jefferson forfeited many of its challenges to the trial court's judgment, including the court's conclusion the earlier federal court action barred Jefferson's due process claim, because Jefferson failed to provide any reasoned analysis or legal authority to support its challenges. Instead, the majority of Jefferson's brief focused on the merits of Jefferson's claims without squarely addressing the basis for the trial court's judgment. Jefferson therefore failed to meet its burden to affirmatively establish the trial court erred.

---

[1] All statutory references are to the Revenue and Taxation Code unless otherwise stated.

3

I

FACTS AND PROCEDURAL HISTORY

Because this appeal follows the sustaining of a demurrer, we summarize the underlying facts as alleged in the complaint and also include additional facts of which the trial court took judicial notice. (*Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 456.) We note Jefferson's opening brief provided no assistance in undertaking this task because the brief failed to include a statement of facts and summary of the relevant procedural history as required by the Rules of Court. (Cal. Rules of Court, rule 8.204(a)(2); *Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 558.) Jefferson therefore has waived any objection that we may have overlooked a material fact.[2] (*William Jefferson I*, *supra*, 228 Cal.App.4th at p. 6, fn. 2.)

In 1990, William A. Kent paid $305,000 to purchase a single-family residence located in Irvine, California. Following several transfers for which there are no details in the record, Michael Kim sold the property to Gopal Productions, Inc. (Gopal) for $271,000 in December 1992[3]. Six months later, Gopal recorded a quitclaim deed

---

[2] This is the second time Jefferson has filed an opening brief that failed to provide the required statement of facts and summary of relevant procedural history. Our opinion in *William Jefferson I* advised Jefferson that its opening brief on that appeal was "'seriously defective'" because it failed to provide this information. (*William Jefferson I*, *supra*, 228 Cal.App.4th at p. 6, fn. 2.) Nonetheless, Jefferson again filed a defective opening brief, omitting the same procedural step he neglected to address in his first appeal.

[3] Jefferson's complaint in this action alternates between alleging Gopal purchased the property in December 1992 and December 2002. This appears to be a typographical error because our earlier decision in *William Jefferson I* and the evidence on which it was based established without dispute that the transfer occurred in December 1992. On our own motion, we judicially notice our prior opinion in *William Jefferson I*. (*Epic Communications, Inc. v. Richwave Technology, Inc.* (2015) 237 Cal.App.4th 1342, 1347, fn. 3 [on its own motion, Court of Appeal may judicially notice its prior opinion and docket]; *People v. Olsen* (2014) 229 Cal.App.4th 981, 986, fn. 2 [same].) Moreover, Jefferson also repeatedly argues the Assessor erred in setting

transferring the property to Jefferson. All parties agree the transfer to Jefferson was not a change of ownership affecting the property's base year value because Gopal and Jefferson were related corporations.

In October 1993, the Assessor sent Gopal a supplemental assessment notice, which acknowledged the December 1992 change of ownership from Kim to Gopal, but notified Gopal the Assessor valued the property at $305,000 at the time of the transfer and therefore would use that figure as the base year value instead of the $271,000 Gopal paid.

In July 2008, Jefferson filed with the Appeals Board an application to change the base year value the Assessor assigned to the property 15 years earlier. In completing the application, Jefferson checked a box stating it designated the application as a claim for refund. At the Appeals Board's evidentiary hearing, Jefferson argued the Assessor made a clerical error in failing to assess the property at the $271,000 purchase price because no evidence supported the Assessor's $305,000 valuation. According to Jefferson, the Appeals Board had authority to correct the clerical error and change the base year valuation.

In April 2009, the Appeals Board found it lacked jurisdiction to change the base year value because Jefferson's challenge attacked the evidentiary basis for the Assessor's determination, but Jefferson failed to contest the valuation within the four-year limitations period. The Appeals Board therefore denied Jefferson's application without deciding whether the Assessor properly valued the property at $305,000 when Gopal purchased it in December 1992.

In July 2009, Jefferson sued the Appeals Board in federal court, alleging the Appeals Board violated Jefferson's due process rights and denied it a fair hearing

---

the property's base year value by failing to use the price Gopal paid to purchase the property in December 1992.

because separate attorneys from the Orange County Counsel's office represented the Assessor at the administrative hearing and worked with the Appeals Board to prepare its decision upholding the Assessor's base year valuation. Following a bench trial, the federal court entered judgment for the Appeals Board based on its finding Government Code section 31000.7 expressly authorized the County Counsel's office to represent both the Assessor and the Appeals Board, and that statute was not unconstitutional either on its face or as applied to Jefferson's claims. Jefferson appealed the district court's judgment and the Ninth Circuit Court of Appeals affirmed. (*Jefferson & Co.*, *supra*, 695 F.3d at p. 961.)

In November 2009, Jefferson filed a state court lawsuit against the Appeals Board challenging its denial of Jefferson's application to reduce the property's base year value. Jefferson alleged the Appeals Board erred in failing to correct the Assessor's clerical error in setting the property's base year value. Jefferson sought a refund of taxes it paid based on the erroneous base year value and an order requiring the Appeals Board to enter a new decision setting the property's base year value at $271,000. The trial court granted the Appeals Board summary judgment on Jefferson's claim because a tax refund action lies only against the city or county that collected the tax, not the appeals board that heard the taxpayer's administrative challenge to the tax. In June 2014, we issued our decision in *William Jefferson I* affirming the trial court's judgment. We explained a tax refund action was the only means available for Jefferson to challenge the Appeals Board's decision, but a refund action may not be maintained against an assessment appeals board because it is a separate and distinct constitutional entity from the city or county that collected the tax. (*William Jefferson I*, *supra*, 228 Cal.App.4th at pp. 5-6, 11.) Jefferson had not named the County as a party, nor did it seek leave to do so.

Shortly after our *William Jefferson I* decision became final, Jefferson filed this action against both the County and the Appeals Board. The first cause of action sought a determination overturning the Appeals Board's decision denying Jefferson's

application to reduce the property's base year value because the decision "was without any [evidence] and was against the weight of the evidence." (Capitalization omitted.) The second cause of action alleged the Appeals Board's decision was invalid because only one member of the three-member board signed the decision. The third cause of action alleged the Appeals Board denied Jefferson due process and a fair hearing because separate attorneys from the County Counsel's office represented the Appeals Board and the Assessor. Jefferson sought an order reducing the base year value to $271,000 and a refund of excess taxes paid based on the improper base year valuation.

The County and the Appeals Board demurred to Jefferson's complaint, arguing (1) Jefferson failed to state a cause of action against the Appeals Board because a tax refund action does not lie against the Appeals Board; (2) all of Jefferson's claims are time-barred under section 5141's six-month limitations period; (3) res judicata and collateral estoppel bar Jefferson's third cause of action for due process violations based on the earlier federal court action alleging the same claims; and (4) Jefferson's complaint is uncertain. To support their demurrers, the County and the Appeals Board asked the trial court to judicially notice (1) Jefferson's first amended complaint in the earlier state court action; (2) a notice of ruling regarding the trial court's decision on the Appeals Board's summary judgment motion in that case; (3) Jefferson's complaint in the federal court action; (4) the federal court's findings of fact and conclusions of law; (5) the federal court's judgment; and (6) the Ninth Circuit's opinion in the federal court action.

The trial court granted the County's and Appeals Board's requests for judicial notice as to all documents except the notice of ruling, and sustained both the County's and the Appeals Board's demurrers on all grounds without leave to amend.[4] This appeal followed.

_____

[4] Jefferson does not challenge the trial court's ruling on the County's and Appeals Board's requests for judicial notice, and we therefore judicially notice the same documents and facts. (Evid. Code, § 459, subd. (a).)

7

II

DISCUSSION

A.      *Jefferson's Burden as Appellant and the Standard of Review*

The cardinal rule of appellate review requires us to presume the trial court's judgment is correct, and therefore the appellant has the burden to affirmatively establish prejudicial error.  (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).)  "'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.  "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented."'  [Citation.]"  (*Foust*, at p. 187.)  "We presume the trial court followed the applicable law."  (*Cahill*, at p. 956.)

"An appellant 'must convince the court, by stating the law and calling relevant portions of the record to the court's attention, that the trial court decision contained reversible error.'  [Citations.]"  (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 869.)  "'Appellate briefs must provide argument and legal authority for the positions taken.  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."'  [Citation.]  'We are not bound to develop appellants' argument for them.  [Citation.]  The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.'  [Citations.]"  (*Cahill*, *supra*, 194 Cal.App.4th at p. 956; see *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 (*Niko*).)  Accordingly, the appellant must provide argument and authority as to why the trial court's specific ruling was wrong, and the failure to do so forfeits any challenge to that ruling.  (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 (*Salas*).)

"We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense.  [Citations.]  We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken."  (*Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1340.)  "'[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.'"  (*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 438-439.)

B.  *Jefferson's Lawsuit Against the County and the Appeals Board Is a Tax Refund Action*

Jefferson contends the trial court erred in concluding this action was a tax refund action subject to the procedures and limitations that govern such actions.  According to Jefferson, "[a]t no time did [it] actually fill out any forms or ask the Board of Supervisors for a refund."  Rather, Jefferson contends this action simply seeks to compel the Appeals Board to correct the Assessor's erroneous base year valuation, and Jefferson will decide whether to seek a refund after the correction is made.  Jefferson misconstrues both its claims and the governing law.

Contrary to Jefferson's contention, it always has sought a refund based on the allegedly erroneous base year valuation.  The application Jefferson submitted to the Appeals Board specifically states Jefferson "designate[s] this application as a claim for refund."  Moreover, Jefferson's complaint in the earlier state court action was entitled "'First Amended Complaint for a Refund of Taxes Improperly Paid'" and expressly prayed for a refund.  (*William Jefferson I*, *supra*, 228 Cal.App.4th at pp. 7-8.)  Similarly, Jefferson's complaint in this action is entitled "Complaint for a Refund of Taxes and/or a Reduction in the Base Year Value With or Without a Refund of Taxes," and asks that the trial court "order any tax refund which may be proven in this case to exist to which [Jefferson] may be entitled."

9

Even assuming Jefferson never expressly sought a tax refund in either its administrative application to the Appeals Board or the complaints it filed in court, we must treat this lawsuit as a tax refund action because that is the only way to challenge the Appeals Board's decision regarding the Assessor's base year property valuation.

Local assessment appeals boards are local administrative bodies the California Constitution established to hear appeals from decisions by local tax assessors. A local appeals board may hear an appeal concerning both a property's assessed value and the assessor's determination on whether a change in ownership occurred that triggered a reassessment. A property owner initiates the administrative hearing process by filing a written application with the local appeals board to change the value the assessor assigned to the owner's property. The local appeals board must hold a public hearing to receive evidence and decide the property owner's appeal. (*William Jefferson I*, *supra*, 228 Cal.App.4th at p. 9.)

At the administrative level, the property owner must distinguish between a successful application that reduces a property's base year value and the property owner's right to a refund of any excess taxes paid based on the erroneous assessment. The local appeals board's correction of a property's base year value allows the assessor to determine whether there has been an overassessment or an underassessment, and the owner must apply for a refund in the case of an overassessment. (*William Jefferson I*, *supra*, 228 Cal.App.4th at p. 10.)

A property owner must exhaust this administrative appeal process before challenging in court the assessor's base year valuation or the local appeals board's decision. The failure to do so will result in dismissal of the property owner's lawsuit. The mechanism for seeking judicial review of the local appeals board's administrative decision is significantly different from seeking judicial review of other administrative agency decisions. Ordinarily, anyone seeking to challenge a local agency's administrative decision would petition the superior court for a writ of administrative

10

mandamus under Code of Civil Procedure section 1094.5. But a taxpayer challenging a decision of the local appeals board must pay the tax and file suit in superior court for a refund. (*William Jefferson I*, *supra*, 228 Cal.App.4th at pp. 10-11.) "Indeed, '[t]he exclusive means of [judicial] review of tax proceedings in California has been the remedy of suit to recover alleged overpayments, and the power of the state to provide such suit as the exclusive remedy is unquestioned.'" (*Id*. at p. 11.)

This rule generally prohibits taxpayers from bringing equitable actions for mandamus, injunctive, or declaratory relief to challenge a local appeals board's decision because a tax refund action provides property owners with an adequate remedy at law. (*William Jefferson I*, *supra*, 228 Cal.App.4th at p. 11.) "Any action challenging the merits of an assessor's base year value determination is a refund action that must be brought against the county or city that collected the tax even if the action does not expressly seek a refund or disclaims the right to a refund." (*Id*. at p. 12.)

"This limitation on taxpayer actions challenging local assessment appeals board decisions derives from the California Constitution and the Revenue and Taxation Code. The California Constitution states, 'No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature.' (Cal. Const., art. XIII, § 32.) Similarly, the Revenue and Taxation Code provides, 'No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against any county, municipality, or district, or any officer thereof, to prevent or enjoin the collection of property taxes sought to be collected.' (§ 4807.) The policy behind these provisions is 'to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted.'" (*William Jefferson I*, *supra*, 228 Cal.App.4th at p. 11.)

11

Because Jefferson's lawsuit challenges the Appeals Board's decision not to change the Assessor's base year property valuation, a refund action is Jefferson's only legal recourse no matter how many times Jefferson denies it is seeking a refund.

To support its contrary contention, Jefferson relies on the foregoing authority emphasizing the distinction between a successful application that reduced a property's base year value and the requirement a property owner must apply for a refund after successfully reducing the base year value for the owner's property. (See *William Jefferson I*, *supra*, 228 Cal.App.4th at p. 10.) That distinction, however, applies only at the administrative level in the proceedings before the Assessor and the Appeals Board. It does not apply to a judicial action challenging a decision by the Appeals Board. As explained above, a lawsuit challenging a decision by the Appeals Board is a refund action even if the action does not expressly seek a refund or disclaims the right to a refund. (*Id*. at p. 12.)

C.    *The Appeals Board Is Not a Proper Party to a Refund Action*

The trial court, recognizing a tax refund action does not lie against a local assessment appeals board, sustained the Appeals Board's demurrer because it concluded Jefferson's lawsuit constituted a tax refund action against the Appeals Board. We agree.

As explained above, this action is properly characterized as a tax refund action because that is the only permissible form of court action to challenge a decision by a local assessment appeals board. In *William Jefferson I*, we explained, "A tax refund action must be brought against the county or city that collected the tax. (§ 5140 ['The person who paid the tax . . . may bring an action only in the superior court . . . against a county or a city to recover a tax which the board of supervisors of the county or the city council of the city has refused to refund on a claim . . .'].) A tax refund action may not be maintained against the local assessment appeals board because it 'is a separate and

12

distinct constitutional entity from the [c]ounty [or city that collected the tax].'" (*William Jefferson I*, *supra*, 228 Cal.App.4th at p. 11.)

Other than complaining the trial court misconstrued its lawsuit as a tax refund action, Jefferson does not challenge the court's ruling Jefferson improperly brought this action against the Appeals Board. Jefferson therefore forfeited any other challenges to the court's ruling. (*Salas*, *supra*, 198 Cal.App.4th at p. 1074; *Cahill*, *supra*, 194 Cal.App.4th at p. 956; *Niko*, *supra*, 144 Cal.App.4th at p. 368.)

D.     *Jefferson's Action Against the County Is Time Barred*

The trial court also sustained the County's demurrer to Jefferson's complaint, finding Jefferson's action fell outside section 5141, subdivision (a)'s six-month limitation. We agree the court correctly concluded Jefferson's action was time barred.

"The six-month statute of limitations set forth in section 5141, subdivision (a) applies to all actions against cities and counties for property tax refunds." (*Geneva Towers Ltd. Partnership v. City and County of San Francisco* (2003) 29 Cal.4th 769, 774.) The limitations period begins to run upon the final administrative decision denying the property owner's application to change the property's base year value or to recover a refund. (*Schoenberg*, *supra*, 179 Cal.App.4th at pp. 1355-1356.) Here, the Appeals Board denied Jefferson's application to change the property's base year value in April 2009, but Jefferson did not file this action against the County until October 2014, more than five years later.

Jefferson contends section 5141, subdivision (a), does not provide the governing statute of limitations because its action does not seek a refund. This argument fails because, as explained above, Jefferson's lawsuit against the County is properly characterized as a tax refund action.

13

Next, Jefferson contends its original state court action against the Appeals Board tolled the statute of limitations, and therefore this action is timely because Jefferson filed it immediately after our decision in the earlier case became final. Jefferson, however, forfeited this argument because it failed to cite any authority to support it. (*Salas*, *supra*, 198 Cal.App.4th at p. 1074; *Cahill*, *supra*, 194 Cal.App.4th at p. 956; *Niko*, *supra*, 144 Cal.App.4th at p. 368.) The contention also fails on the merits because a tax refund action erroneously filed against a local assessment appeals board does not toll the statute of limitations against the city or county that collected the tax at issue.[5] (*Schoenberg*, *supra*, 179 Cal.App.4th at pp. 1355-1356.)

In *Schoenberg*, a property owner appealed the local assessor's decision to reassess the owner's property and change its base year value. When the local appeals board heard and denied the appeal, the owner filed a lawsuit against the appeals board to reduce the assessed value of his land. Several months later, the owner amended his complaint to add the county that collected the tax as a defendant. The county demurred on the ground section 5141, subdivision (a)'s limitation period barred the owner's complaint because the owner named the county as a defendant more than six month after the appeals board denied the owner's appeal. The trial court overruled the demurrer on the statute of limitations ground, but sustained it without leave to amend on other grounds. The owner appealed, and the county cross-appealed to challenge the trial

---

[5]     Jefferson also contends its complaint against the County was timely because the federal court action Jefferson filed against the Appeals Board tolled the statute of limitations as well. Not so. Even assuming the federal court action tolled the statute of limitations, the tolling period ended no later than 2012 when the Ninth Circuit affirmed the district court's judgment against Jefferson. (See *Jefferson & Co.*, *supra*, 695 F.3d at p. 960.) Jefferson did not file this action against the County until the end of 2014, nearly two years after the federal court action ended and therefore well after the limitations period expired.

court's ruling the refund action against the county was not time barred. (*Schoenberg*, *supra*, 179 Cal.App.4th at pp. 1350-1352.)

The Court of Appeal agreed with the county, holding section 5141, subdivision (a)'s limitation period barred the owner's refund action against the county. In reaching that decision, the *Schoenberg* court rejected the owner's contention his complaint against the appeals board tolled the statute of limitations on his claim against the county. The court acknowledged a statute of limitation may be tolled while a plaintiff reasonably pursues one of several remedies in good faith, but explained the owner did not meet that standard because the law was clear that the only judicial remedy the owner had was a refund action against the county. (*Schoenberg*, *supra*, 179 Cal.App.4th at pp. 1355-1356.)

Finally, Jefferson contends the statute of limitations does not bar its claim against the County because the trial court in the earlier action failed to join the County as a defendant. According to Jefferson, Code of Civil Procedure section 389, subdivision (a), required the court to order the inclusion of the County in the lawsuit because the County was a necessary party to the action. Again, Jefferson fails to cite any authority to support this contention and therefore forfeited it. (*Salas*, *supra*, 198 Cal.App.4th at p. 1074; *Cahill*, *supra*, 194 Cal.App.4th at p. 956; *Niko*, *supra*, 144 Cal.App.4th at p. 368.) Nonetheless, the contention fails on its merits. As explained above, Jefferson's original claim against the Appeals Board did not toll the statute of limitations on its refund action against the County. Even if the County was joined in that earlier action, such joinder must have occurred within six month of the Appeals Board's decision denying Jefferson's application to change the base year value. (*Schoenberg*, *supra*, 179 Cal.App.4th at pp. 1355-1356.) Jefferson, however, did not even file the action against the Appeals Board within six months of the Appeals Board's denial of his application, and any joinder would have occurred much later than that. As explained

above, the Appeals Board denied Jefferson's application in April 2009, but Jefferson did not file the earlier state court action until November 2009.

E.     *Jefferson Forfeited Its Challenge to the Trial Court's Ruling the Earlier Federal Court Judgment Bars Jefferson's Due Process Claim*

The trial court sustained the County and Appeals Board's demurrers to Jefferson's third cause of action, concluding the judgment in Jefferson's earlier federal court action prevented Jefferson from relitigating the same claim in this action. In the federal court action, Jefferson alleged the Appeals Board denied it a fair hearing and violated its due process rights because two separate attorneys from the County Counsel's office represented the Assessor and the Appeals Board on Jefferson's application to change the Assessor's base year value determination. Jefferson's third cause of action in this case alleged the Appeals Board and the County denied Jefferson a fair hearing and violated its due process rights because two separate attorneys from the County Counsel's office represented the Assessor and the Appeals Board during the administrative proceedings.

Jefferson contends the trial court erred in sustaining the demurrers on this ground because the federal court claim was brought under the federal Constitution and the current claim was brought under the California Constitution. The only authority Jefferson cites to support this challenge is *Reynolds v. Superior Court* (1974) 12 Cal.3d 834, 842, abrogated by constitutional amendment as stated in *Izazaga v. Superior Court* (1991) 54 Cal.3d 356, which explains that a federal court's interpretation of the U.S. Constitution does not prevent a state court from construing a similar provision in a state constitution differently.

Jefferson does not address or cite any authority concerning res judicata or collateral estoppel, which are the legal doctrines the trial court applied to conclude the earlier federal court judgment barred Jefferson from relitigating its due process claim. Similarly, Jefferson does not cite any authority to show its due process rights under the

16

U.S. Constitution were any different than its due process rights under the California Constitution. The federal court rejected Jefferson's due process claim because a California statute, Government Code section 31000.7, expressly authorized the County Counsel's office to represent both the Assessor and the Appeals Board in the same administrative proceeding. Jefferson failed to cite any authority to show California law provided it with any greater or different rights that would prevent the federal court judgment from defeating Jefferson's efforts to relitigate its due process claim. By failing to address these issues, Jefferson forfeited its challenge to the trial court's ruling. (*Salas*, *supra*, 198 Cal.App.4th at p. 1074; *Cahill*, *supra*, 194 Cal.App.4th at p. 956; *Niko*, *supra*, 144 Cal.App.4th at p. 368.)

## III

### DISPOSITION

The judgment is affirmed. The County and the Appeals Board shall recover their costs on appeal.

ARONSON, ACTING P. J.

WE CONCUR:

FYBEL, J.

IKOLA, J.

17